**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| KAREN V. VANCE, | ) | NO. CV 07-04418-SS |
| | ) | |
|              Plaintiff, | ) | **MEMORANDUM DECISION AND ORDER** |
| | ) | |
|       v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
|            Defendant. | ) | |
| | ) | |

**I.   INTRODUCTION**

Plaintiff Karen Vance ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Supplemental Security Income ("SSI") benefits.  The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.  For the reasons stated below, the decision of the Agency is AFFIRMED.

\\

\\

## II.   PROCEDURAL HISTORY

On April 5, 2005, Plaintiff applied for SSI benefits claiming that she became disabled due to "trouble breathing" on January 19, 2004. (Administrative Record ("AR") 53, 60-61).   The Agency denied her application on July 13, 2005.   (AR 48).   She subsequently submitted a request for reconsideration additionally alleging a stroke, memory loss and confusion.   (See AR 41).   The Agency denied this request on December 13, 2005.   (AR 41).   Plaintiff then requested a hearing, which was held before Administrative Law Judge ("ALJ") Keith Dietterle on February 14, 2007.   (AR 10).   Plaintiff appeared with counsel and testified.   (AR 10).   David Rinehart, a Vocational Expert ("VE"), also testified.   (AR 10, 318-22).

On February 3, 2007, the ALJ issued a decision denying benefits. (AR 10-15).   Plaintiff sought review before the Appeals Council, which denied her request on May 18, 2007.   (AR 3-6).   Plaintiff filed the instant action on July 5, 2007.   (Complaint ("Compl.") 1).   Pursuant to the Court's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on April 3, 2008.

## III.   FACTUAL BACKGROUND

Plaintiff was born on August 8, 1962, and was forty-four years old at the time of the hearing.   (AR 296).   The highest level of education she completed was the twelfth grade.   (AR 296).   Plaintiff has not

worked since January of 2004 and lives with her sister.  (AR 14, 299, 310).

**A.   Relevant Mental Health History**

Plaintiff has no relevant mental health history prior to the inception of this case.  She has never received treatment for her mental impairments.  (AR 12, 13, 286).  Nevertheless, on November 21, 2005, Dr. Ahmad Riahinejad, a clinical psychologist acting as the consultative examiner, evaluated Plaintiff's mental condition.  (AR 286-90).  Dr. Riahinejad diagnosed Plaintiff with dysthymia[1] and borderline intellectual functioning.  (AR 289).  He found that Plaintiff's psychosocial stressors are moderate and assigned her a Global Assessment of Functioning ("GAF") score of fifty.[2]  (AR 289).  Dr. Riahinejad

_____

[1]   Dysthymia is a chronic mood disorder that manifests as depression for most of the day, more days than not and is accompanied by some of the following: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions and feelings of hopelessness.  Stedman's Medical Dictionary 556 (Maureen Barlow Pugh ed., Lippincott Williams & Wilkins 2000) (1911).

[2]   A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 2000) (hereafter, "DSM IV").

A rating of 41-50 on the GAF scale indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)."  See DSM IV, at 34.

observed that Plaintiff is capable of managing her own funds, shopping and making meals. (AR 287, 289). However, the doctor noted that she needs some assistance in completing other household chores. (AR 287). Dr. Riahinejad also found that Plaintiff "could have difficulty with pace and persistence" but did not offer an opinion on the matter, deferring instead to specialists. (AR 289). Dr. Riahinejad determined that Plaintiff is "able to accept supervision and relate with coworkers." (AR 289). Ultimately, he concluded that Plaintiff is "able to understand, remember and carry out simple, repetitive-type instructions with minimal difficulty." (AR 289).

Additionally, on December 9, 2005, Dr. Robert T. Ferrell, a psychiatrist, reviewed the evidence and evaluated Plaintiff's mental and "affective" disorders. (AR 212-25). Dr. Ferrell diagnosed Plaintiff with dysthymia and borderline intellectual functioning. (AR 213, 215, 224). He observed that Plaintiff has mild restrictions in activities of daily living; no difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace and no episodes of extended decompensation. (AR 222).

   B.  **Plaintiff's Testimony**

Plaintiff testified at the hearing that she has not worked since 2004. (AR 301). She explained that she previously worked as a sandwich maker at a deli and as a school cook. (AR 301, 319-20). However, she claims that she is now unable to stand for long periods of time due to her asthma and cannot continue her previous work. (AR 302). She also

4

alleges that she experiences memory loss and confusion.  (AR 303, 306-07).

### IV   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

---

[3]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. § 416.910.

5

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[4] age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v.

---

[4]   Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a).

6

_Apfel_, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  _Moore v. Apfel_, 216 F.3d 864, 869 (9th Cir. 2000).

## V.   THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process to determine that Plaintiff is "not under a 'disability,' as defined in the Social Security Act."  (AR 15).  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of her disability.  (AR 11, 14).  At step two, he found that Plaintiff's asthma, obesity and dysthymia are severe impairments.  (AR 13, 14).  In making this finding, the ALJ adopted the opinions of clinical psychologist Dr. Ahmad R. Riahinejad and psychiatrist Dr. Robert T. Ferrell.  (AR 12).  The ALJ observed that Dr. Riahinejad diagnosed Plaintiff with borderline intellectual functioning but found that her attention, concentration, memory and ability to relate to co-workers is fair.  (AR 12).  The ALJ also found that Dr. Ferrell evaluated Plaintiff as moderately limited in her ability to carry out detailed instructions but able to "sustain simple repetitive tasks with adequate pace and persistence."  (AR 12).  Additionally, the ALJ observed that Plaintiff can complete "household chores without any problems."  (AR 13).

At step three, the ALJ concluded that Plaintiff's impairments, either singly or in combination, do not meet or equal the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

7

(AR 13, 14).  At step four, based on the VE's testimony and Plaintiff's description of her former employment, the ALJ determined that Plaintiff is unable to perform her past work as a sandwich maker.  (AR 13, 14). Specifically, the ALJ found that Plaintiff's former employment required "medium work activity" but that Plaintiff can only

> [L]ift and carry [twenty] pounds occasionally, [ten] pounds frequently.  She can sit [six] hours in an [eight] hour day, stand and walk [six] hours in an [eight] hour day.  She can occasionally climb, bend, balance, stoop, kneel, crouch and crawl.  She should have no exposure to dust, fumes or gases. She is capable of simple repetitive work.

(AR 13, 15).  The ALJ also determined that Plaintiff is a younger individual with a high school (or equivalent) education and skilled work experience.  (AR 14, 15).  He thus concluded that Plaintiff retains a RFC "for a significant range of light work" but cannot return to her previous position as it required medium work activity.  (AR 13, 15).

Nonetheless, at step five, the ALJ found that based on Plaintiff's medical history, age, educational background, work experience, RFC and the VE's testimony, there are a significant number of jobs in the national economy that the Plaintiff can perform, including work as a cashier, an information clerk or a fundraiser.  (AR 14, 15). Accordingly, the ALJ found that Plaintiff was not disabled.  (AR 14, 15).

\\

\\

# VI.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

# VI.   DISCUSSION

Plaintiff contends that the ALJ erred for three reasons.  (Jt. Stip. 2).  First, she argues that the ALJ failed to properly consider the consultative examiner's opinion and, in particular, the GAF score that he assigned. (Jt. Stip. 3-4)  Second, she asserts the ALJ did not issue an adequate opinion regarding the severity of her mental

9

impairment.   (Jt. Stip. 5-6).   Third, and finally, Plaintiff contends that the ALJ posed incomplete hypothetical questions to the VE when he neglected to mention that the consultative examiner assigned Plaintiff a GAF score of fifty.   (Jt. Stip. 8-9).   For the reasons discussed below, the Court disagrees with all of Plaintiff's contentions and affirms the ALJ's decision.

A.    **The ALJ Properly Considered The Consultative Examiner's Opinion In Assessing Plaintiff's Disability**

Plaintiff contends that the ALJ failed to consider all material aspects of the consultative examiner's opinion.   (Jt. Stip. 3-4). Specifically, Plaintiff argues that the ALJ did not assess the GAF score of fifty that consultative examiner Dr. Riahinejad assigned and did not provide adequate reasons for rejecting the doctor's opinion.   (Jt. Stip 3-4).   Plaintiff asserts that these alleged errors warrant relief.   (Jt. Stip. 3-4).   The Court disagrees.

To the extent that Plaintiff argues that the ALJ rejected the consultative examiner's opinion, the Court disagrees.   The ALJ did not reject the opinion of the consultative examiner but rather correctly focused on the conclusions drawn from the doctor's overall assessment. In reviewing Dr. Riahinejad's November 21, 2005 report, the ALJ noted that the doctor rated Plaintiff's memory, concentration and attention as fair.   (AR 12, 288).   He found that the doctor diagnosed dysthymia and borderline intellectual functioning but also determined that Plaintiff is able to "accept supervision and relate with coworkers." (AR 12, 289).   The ALJ also considered the doctor's depiction of

10

Plaintiff's limitations, noting that she may "have moderate to severe difficultly understanding, remembering and carrying out complex instructions." (AR 12). Even the ALJ's ultimate finding that Plaintiff is "capable of simple repetitive work," is consistent with Dr. Riahinejad's conclusions. (Compare AR 15 with 289 (Dr. Riahinejad concluding that Plaintiff is "able to carry out simple, repetitive-type instructions with minimal difficulty.")). Thus, the ALJ did not reject the consultative examiner's opinion. Rather, the ALJ appropriately considered the opinion as a whole.

Further, the ALJ did not err by omitting an unnecessary discussion of Plaintiff's GAF score. GAF scores are not dispositive in social security cases. See 65 Fed. Reg. 50746, 50764-65 (August 21, 2000)(GAF scores are not directly correlative to Social Security severity assessments). The scores are only intended for use in planninng treatment and measuring its impact. See DSM IV, at 32. The ALJ's failure to directly reference the GAF score in the RFC assessment does not, by itself, make the assessment inaccurate. See Howard v. Comm'r of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, an ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); see also Orellana v. Astrue, __ F. Supp. __, 2008 WL 398834, at *9 (E.D. Cal. Feb. 12, 2008) (citing Howard); Brewster v. Barnhart, 366 F. Supp. 2d 858, 876 (E.D. Mo. 2005) (citing Howard). Therefore, the ALJ did not err when he omitted direct discussion of Plaintiff's GAF score from his decision.

Moreover, the ALJ did not, as Plaintiff suggests, treat the GAF score as irrelevant. Dr Riahinejad's report evaluates Plaintiff's RFC and explicitly concludes that Plaintiff is capable of "carry[ing] out simple, repetitive-type instructions with minimal difficulty." (AR 289). In so concluding, Dr. Riahinejad interpreted the meaning of the GAF score that he assigned Plaintiff and the ALJ incorporated this assessment into his final decision. (See AR 12-13). Thus, no further discussion of the GAF score was necessary.

In sum, ALJ's opinion does not reject Dr. Riahinejad's evaluation of Plaintiff but rather relies on the doctor's overall assessment to develop a well-supported opinion regarding Plaintiff's mental impairments. Furthermore, the ALJ did not err by omitting discussion of Plaintiff's GAF score because Dr. Riahinejad interpreted the meaning of his assessment when he evaluated Plaintiff's mental abilities. This rendered discussion of the specific GAF score unnecessary. Accordingly, Plaintiff's claim does not warrant relief.

**B.** **The ALJ's Finding Regarding Plaintiff's Mental Impairment Satisfies The Step Two Supplemental Analysis**

Plaintiff contends that after the ALJ determined that her mental impairment was severe, he did not successfully implement the supplemental evaluation required by the Agency. (Jt. Stip. 5-6). She thus claims that the ALJ did not issue an adequate opinion regarding the severity of her impairment and that his decision was error. (Jt. Stip. 6). The Court disagrees.

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the five-step sequential evaluation process with additional regulations.[5] Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-915 (9th Cir. 1998) (citing 20 C.F.R. § 416.920a) (per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work.  20 C.F.R. § 416.920a(b)(1). Second, when the plaintiff establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 416.920a(c)(2)-(4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. § 416.920a(d) (emphasis added).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a)c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

---

[5]     These additional steps are intended to assist the ALJ in determining the severity of mental impairments at steps two and three. The mental RFC assessment used at steps four and five of the evaluation process, on the other hand, require a more detailed analysis.  Social Security Ruling 98-8p, 1996 WL 374184 at *4.

13

The regulations describe an impairment as follows:

> [A physical or mental impairment] must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statements of symptoms.

20 C.F.R. § 416.908; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (noting that the existence of a medically determinable physical or mental impairment may only be established with objective medical findings) (citing Social Security Ruling 96-4p, 1996 WL 374187 at *1-2).

Here, the ALJ correctly implemented the Agency's supplemental evaluation. (See AR 12-14). First, the ALJ discussed the Plaintiff's relevant medical findings, noting that she has no history of treatment for a mental impairment. (AR 12). The ALJ then specifically discussed and adopted the findings of the consultative examiner Dr. Riahinejad and the Agency's psychiatrist, Dr. Ferrell. (AR 12-13). Next, the ALJ determined that Plaintiff's mental impairment is severe but that it does not "meet or equal[] the requirements listed in any section of Appendix 1 to Subpart P of Regulation[] No. 4." (AR 13). Finally, the ALJ assessed Plaintiff's RFC and concluded that despite her mental impairment, Plaintiff is "capable of simple repetitive work." (AR 13).

14

Although the AlJ did not specifically rate the degree of functional loss in the four areas described in 20 C.F.R. § 416.920a(c)(3), he relied on the opinions of Drs. Riahinejad and Ferrell who independently evaluated Plaintiff. (See AR 12). The doctors' assessment sufficiently rated Plaintiff's degree of functional loss.

Dr. Riahinejad observed that Plaintiff is able to cook, shop and take care of her own finances. (AR 287; see also AR 300-01). He found that her psychosocial stressors are moderate and that she can accept supervision and relate well with co-workers. (AR 289). These findings are indicative of a minimal degree of functional loss in the activities of daily living and social functioning. The doctor also evaluated Plaintiff's RFC and determined that she can perform simple repetitive tasks with only minimal difficulty. (AR 289).

Additionally, Dr. Ferrell explicitly found that Plaintiff has mild restrictions in the activities of daily living; no difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace and no episodes of extended decompensation. (AR 222). Dr. Ferrell determined that Plaintiff was "alert and oriented times three." (AR 224). "[She] [w]as able to comprehend simple but not complex aspects of [the] evaluation" and her memory was "intact." (AR 224). Although he found her "fund of knowledge" low, Dr. Ferrell observed that Plaintiff's concentration and attention span were fair. (AR 224).

In adopting the opinions of these doctors, the ALJ sufficiently supported his findings regarding the Plaintiff's degree of functional

loss in each of the four areas of function.  See <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that consultative examiner's report may constitute substantial evidence because it rests on independent clinical findings).  Moreover, the ALJ supplemented this analysis by noting that Plaintiff never sought treatment or counseling for her mental impairment.  (AR 12).  She had no difficulty doing household chores and acted alert and appropriate at the hearing.  (AR 12-13).

In sum, the ALJ supported his conclusions with substantial evidence in the record.  He properly found that, although Plaintiff's mental impairment satisfies the <u>de minimis</u> test at step two, it is insufficient to qualify as a disability under the Social Security Act's supplemental analysis.  Thus, Plaintiff's claim does not warrant relief.

**C.  <u>The ALJ Posed Complete Hypothetical Questions To The VE</u>**

Plaintiff contends that the ALJ's hypotheticals to the VE were incomplete because he did not mention Plaintiff's GAF score of fifty. (Jt. Stip. 8-9).  Plaintiff claims that this alleged error prevented an accurate assessment of her vocational prospects and thus warrants remand.  (Jt. Stip. 9).  Again, the Court disagrees.

When the ALJ determines that a plaintiff cannot perform past relevant work because of a severe impairment, the ALJ should consider the RFC assessment along with other vocational factors in order to determine if the plaintiff can return to work.  20 C.F.R. § 416.920(g)(1).  One of these factors can be a VE's testimony.  See 20

16

C.F.R. § 416.966(e).   In order for the VE's testimony to constitute substantial evidence, hypothetical questions posed to the expert must "consider all of the claimant's limitations." Andrews, 53 F.3d at 1044.

Here, the ALJ provided the VE with two hypothetical questions. (AR 321-22).   First, the ALJ asked the VE to assess the situation of

> [A] younger individual with a [twelfth]-grade education who is literate, speaks English, and [has] the work experience as [previously] outlined . . . This person has the physical capacity as follows: This person can sit six hours out of an eight-hour day; stand and walk six hours out of an eight-hour day; occasionally lift [twenty] pounds, frequently lift [ten] pounds; can occasionally climb, bend[,] balance, stoop, kneel, crouch, crawl; this person should have no exposure to dust, fumes, or gasses; and this person is capable of simple, repetitive tasks.

(AR 321).   The ALJ asked if this individual could return to her past relevant work and whether there are any other jobs available in the national economy for this person.   (AR 321).

Second, the ALJ asked the VE to evaluate "the same type of individual; however, because of difficulties from a stroke, difficulties breathing[] and a requirement [for] treatment on a regular basis, this person would be [] unable to sustain work for an eight-hour day or a five-day workweek."   (AR 322).   The ALJ again asked if this individual

could return to her past relevant work and if there are any other jobs available in the labor market.  (AR 322).

Plaintiff complains that the ALJ's hypothetical questions do not accurately represent all of her limitations because the ALJ neglected to include that the proposed individual was assigned a GAF score of fifty. (Jt. Stip. 8-9).  However, as discussed above, GAF scores are not dispositive in Social Security cases. (See 65 Fed. Reg. at 50764-65; see also Discussion, infra, Part A).  They are primarily used as diagnostic tools and although they may be relevant to an ALJ's findings, they are not essential.  (See 65 Fed. Reg. at 50764-65; see also Discussion, infra, Part A).  Thus, a hypothetical need not include a GAF score to accurately reflect a claimant's limitations.

Furthermore, the Agency has expressly rejected endorsing the GAF score as a determinative factor in Social Security cases.  See 65 Fed. Reg. at 50764-65.  The Agency explained that GAF scores "[do] not have a direct correlation to the severity requirements in our mental disorder listings." Id.  Thus, in creating the hypothetical questions presented to the VE, the ALJ properly focused on the consultative examiner's ultimate conclusions and did not err simply by omitting the GAF score. (See Discussion, infra, Part A (concluding that the ALJ  appropriately focused on Dr. Riahinejad's opinion as a whole to determine RFC)).

Accordingly, the ALJ's hypothetical questions accurately reflected Plaintiff's limitations despite the omission of a GAF score.  Therefore, the ALJ's determination that the Plaintiff is not disabled is supported

18

1   by substantial evidence in the record and Plaintiff is not entitled to

2   relief.

3

4                              **VIII.   CONCLUSION**

5

6        Consistent with the foregoing, IT IS ORDERED that judgment be

7   entered AFFIRMING the decision of the Commissioner.  IT IS FURTHER

8   ORDERED that the Clerk of the Court serve copies of this Order and

9   the Judgment on counsel for both parties.

10

11  DATED: July 30, 2008

12                                        /S/

13                              _____
                                SUZANNE H. SEGAL
14                              UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    19